UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OWEN HARTY,<br>　　Plaintiff, | :<br>:　CIVIL ACTION NO.<br>:　3:11-CV-01760 (VLB)<br>: |
| v. | : |
| BULL'S HEAD REALTY and<br>JAMES GRUNBERGER,<br>　　Defendants. | :<br>:<br>:<br>:　March 18, 2013 |

### MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION TO DISMISS
### [Dkt. 13]

I.  Introduction

The Plaintiff, Owen Harty ("Harty"), brings this action against Defendants Bull's Head Realty, and James Grunberger alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189, et seq. ("Title III" of the "ADA"). Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For the reasons that follow, Defendants' Motion to Dismiss is DENIED.

II.  Factual Background

The following facts and allegations, deemed to be true for purposes of the Motion to Dismiss, are taken from Plaintiff's complaint and an affidavit included with Plaintiff's opposition to Defendants' Motion. Mr. Harty, a resident of Broward County, Florida, is "mobility impaired and is bound to ambulate in a scooter or with other assistive devices." [Dkt. 1, Compl. ¶ 1]. He is paralyzed from the waist

down and uses a wheelchair.  [Dkt. 20-1, Harty Aff. ¶ 1].  Harty is a licensed private detective and a member of the National Rifle Association who teaches courses in weapons handling and safety.  [Dkt. 20-1, Harty Aff. ¶ 2].  In his capacities as such, Harty travels nationwide meeting with business contacts and visiting gun shows.  [Dkt. 20-1, Harty Aff. ¶ 2].  Harty also purports to be a "tester for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA."  [Dkt. 1, Compl. ¶ 6].

The Defendants own and operate the Bull's Head Shopping Center (the "Shopping Center" or "Center") in Stamford, CT.  [Dkt. 1, Compl. ¶ 2].  Upon visiting the Center in November 2010, Mr. Harty claims to have "encountered architectural barriers" which discriminate against him on the basis of his disability and prevent him from returning to the Center, including (a) curb cuts with steep, non-compliant slopes; (b) non-compliant access aisles; (c) handicapped-designated parking spaces without signs; (d) non-compliant changes in level; (e) ramps without handrails; (f) disabled parking spaces which are too far away from the entrances of the facility; and (g) handicapped-designated parking spaces which are improperly dispersed throughout the Center.  [Dkt. 1, Compl. ¶ 7].  The Plaintiff intends to return to the Center to "avail himself of the goods and services offered to the public . . . and to determine whether the [Shopping Center] has been made ADA compliant."  [Dkt. 1, Compl. ¶ 5; Dkt. 20-1, Harty Aff. ¶ 4].

Harty avers that he is a former resident of the Nyack, New York area and returns several times each year to visit family who still reside there. [Dkt. 20-1, Harty Aff. ¶¶ 3, 5]. Harty last visited in August and September 2012 and had planned to travel to Connecticut but was impeded by flooding caused by Hurricane Irene. In addition, his plans to visit the area in April, October, or November 2012 were thwarted by personal illness. [Dkt. 20-1, Harty Aff. ¶ 5]. Harty plans to visit the Stamford, Connecticut area to attend a gun show in October or November, 2013, at the latest. [Dkt. 20-1, Harty Aff. ¶ 5]. Harty states that he would like to visit the Center during his upcoming visit, but knows that it would be futile to do so, as he will be "unable to park, exit [his] vehicle and safely approach the stores." [Dkt. 20-1, Harty Aff. ¶ 5].

III.   Standard of Review

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). *Id*. In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *In re AIG Advisor Group Sec. Litig.*, 309 F. App'x. 495, 497 (2d Cir. 2009). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

3

as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Zito v. New York City Office of Payroll Admin.*, No. 12-1069, 2013 WL 978951, at *1 (2d Cir. Mar. 14, 2013) (internal quotation marks and citations omitted).  In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n. 4 (2d Cir. 2007).  *See also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings"); *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (holding same).  As noted, Mr. Harty has submitted an affidavit with his opposition to Defendants' Motion to Dismiss and which the Court will consider.  [Dkt. 20-1].

IV. <u>Analysis</u>

The Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction on the basis that Harty lacks standing to bring the action.  For the reasons that follow, the Court holds that Plaintiff has sufficiently pleaded standing.

5

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "In order to state a claim for violation of Title III … a plaintiff must 'establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.'" *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012) (citing *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008), *cert. denied*, ––– U.S. –––, 129 S. Ct. 1581, (2009)). "To establish standing, a plaintiff must demonstrate: (1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) 'a causal connection between the injury and the conduct complained of'; and (3) redressability of the injury by a favorable decision." *Harty v. Simon Property Group, L.P.*, 428 F. App'x 69, 71 (2d Cir. June 29, 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted)). Furthermore, "a plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." *Harty*, 428 F. App'x at 71. Thus, "to establish standing in an ADA suit seeking injunctive relief based upon lack of access to a public accommodation, [the Second Circuit] ha[s] held that a plaintiff must (1) 'allege[ ] past injury under the ADA'; (2) show that 'it is reasonable to infer from [his or] her

6

complaint that this discriminatory treatment will continue'; and (3) show that 'it is also reasonable to infer, based on the past frequency of [his or] her visits and the proximity of [the public accommodation] to [his or] her home, that [he or she] intends to return to [the public accommodation] in the future.'" *Id.* (*quoting Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)).

Defendants argue that Harty has failed to plead standing because he has not sufficiently alleged an intent to return to the premises in the future, has omitted any allegation that he actually patronized or attempted to patronize the Shopping Center in good faith, or that he regularly, or with any frequency, has visited or will visit the area. The Court finds these arguments to be unavailing based on recent Second Circuit precedent.

In *Harty v. Simon Property Group, L.P.*, a case involving the instant Plaintiff's alleged lack of access to the Nanuet Mall in Nanuet, New York in violation of Title III, the Second Circuit held that the complaint sufficiently pled standing based upon a plausible intent to return to the premises. 428 F. App'x 69. In that case, Harty alleged that he desired to return to the Nanuet Mall "'to avail himself of the goods and services offered to the public at the property' and as a tester 'to determine whether the property has been made ADA compliant.'" *Id.* at 71. The Second Circuit also noted that Harty submitted an affidavit in opposition to the defendant's motion to dismiss averring that he taught courses in weapons handling and safety for which he traveled nationwide and visited gun shows, and that, as a former resident of New York, he returned "to the area quite often to visit family who still reside there." *Id.* Harty attached a list of upcoming New York-

7

area gun shows to the affidavit, and attested that he would be "attending these gun shows and [would] be traveling through, and shopping at, various shopping centers" as well as visiting friends and family in New York. *Id.* The Second Circuit ruled that these allegations and sworn statements were "sufficient to support a plausible inference at the pleading stage that Harty [would] likely return to the Nanuet Mall." *Id.* at 71-72. In thus holding, the Second Circuit distinguished *Harty* from cases in which the likelihood of a Title III plaintiff returning to the site of the alleged discrimination was contingent upon events whose occurrence was speculative and beyond the plaintiff's control, noting that "[b]y contrast, Harty avows a present intention to return to the Nanuet Mall, an act that depends only upon his own volition, and the likelihood of which finds some support in professional and family reasons." *Id.* at 72. The Second Circuit's decision specifically overturned the district court's holding that Harty had merely posited "a vague and unsupported general intent or desire to visit" the property again and had failed to allege concrete reasons for a return to the specific shopping area at issue. *Harty v. Simon Property Group, L.P.*, 2010 WL 5065982, at *2 (S.D.N.Y. Dec. 7, 2010).

      Here, too, Plaintiff has sufficiently alleged an intent to return to the Bull's Head Shopping Center based on the Second Circuit's precedent in *Harty*. First, the Court notes that the complaint in *Harty v. Simon Property Group, L.P.* and that in the present case are remarkably similar. Here, Harty avows a present intention to return to the Shopping Center, dependent ultimately and only upon his own volition. Mr. Harty, as he did in his prior case before the Second Circuit, has

8

affirmed that he teaches courses in weapons handling and safety, travels nationwide to attend gun shows and to visit business contacts, and often visits the Nyack, New York area to visit friends and family (in addition to meeting with business contacts and attending gun shows).  He has also averred an intent to return to the Stamford, Connecticut area in order to shop at the Center and also as an ADA tester to determine the Center's compliance with the ADA.  The only significant detail that differs between *Harty v. Simon Property Group, L.P.* and the case at hand is that Harty has here omitted the list of upcoming gun shows that he affixed to his affidavit in his Second Circuit case.  Harty has, however, sworn that he intends to visit the Stamford, CT area to attend a gun show no later than October or November, 2013, and that but for the Shopping Center's noncompliance with the ADA and the impossibility of traversing the property, Harty would return to the Center to shop.  He also has sworn that he intended to visit the Stamford, Connecticut area on several different occasions in the recent past but was thwarted by personal illness and a natural disaster.

　　　The Court further notes that the distance between Harty's permanent residence in Florida and the Bull's Head Shopping Center – some 1200 miles – is not dispositive of standing.  The site of the alleged discrimination in *Harty v. Simon Property Group, L.P.* was also 1200 miles from Harty's permanent residence.  *Harty*, 2010 WL 5065982, at *2.  The Second Circuit's analysis, though, credited Harty's intention to return to the area for business and personal reasons, as this Court does in this case.  Nanuet, New York, the site of the Nanuet Mall in *Harty v. Simon Property Group*, is the neighboring town of Nyack, where Harty

9

previously lived and where he claims his friends and family still reside.  Stamford, Connecticut, is a mere twenty-eight miles from Nyack, New York, hardly the formidable distance that Defendants contend.[1]  At the pleading stage, these allegations and affirmations render Harty's intention to return to the Bull's Head Shopping Center in the future to be plausibly alleged based on Harty's professed business and professional ties to the Stamford, Connecticut area and the Second Circuit's precedent in *Harty v. Simon Property Group.  See also Hirsch v. Hui Zhen Huang,* No. 10–cv–9497(LTS), 2011 WL 6129939, at *3 (S.D.N.Y. Dec. 9, 2011) (plaintiff sufficiently pleaded standing where he alleged that he visited restaurant once, encountered a barrier to entry into restaurant, and "continues to desire to visit the [restaurant] in the future" but is prevented by the entry barrier); *Kreisler v. Second Ave. Diner Corp.*, 10 CIV. 7592 RJS, 2011 WL 4686500, at *2 (S.D.N.Y. Oct. 5, 2011) ("The 'intent to return' requirement is satisfied where the plaintiff lives near the defendant establishment or visits the area frequently and has stated an intent or desire to return").

Defendants further argue that an ADA tester does not have standing to bring an ADA suit.  Harty contends in opposition that one does.  The Court declines to rule on this issue of tester standing as it is unnecessary to the above standing analysis.  It is perhaps worth noting, though, that the Second Circuit in *Harty v. Simon Property Group* specifically included the plaintiff's self-professed status as a tester as a fact in its intent to return analysis, after the lower court had explicitly ruled that Harty's tester status did not confer standing.  *Harty*, 428 F.

---

[1] *See* https://maps.google.com.

App'x at 71; *Harty*, 2010 WL 5065982, at *3. It appears, then, that the issue of tester status is unsettled in this Circuit, and Defendants offer no contrary legal precedent from within this Circuit. In support of their proposition that Harty has failed to demonstrate a concrete and definite intention of returning to the premises, Defendants cite to a handful of out-of-circuit cases. Any analysis of Harty's intent to return, though, is incomplete without consideration of the Second Circuit's decision in *Harty v. Simon Property Group*, as this Court is bound by Second Circuit precedent and especially so in light of the close similarity of the facts and pleadings at issue in that case and in the case before this Court. Defendants have offered no Second Circuit precedent to contradict *Harty v. Simon Property Group*. The ultimate import of this inclusion and the extent of the Second Circuit's ruling, though, is unnecessary to this Court's analysis at this time.

Further, the Defendants' assertion that Harty has failed to allege any specific defect existing at the Shopping Center is unavailing.[2] On the contrary, Harty has specifically alleged that the Shopping Center exhibits (a) curb cuts with steep, non-compliant slopes; (b) non-compliant access aisles; (c) handicapped-designated parking spaces without signs; (d) non-compliant changes in level; (e) ramps without handrails; (f) disabled parking spaces which are too far away from the entrances of the facility; and (g) handicapped-designated parking spaces which are improperly dispersed throughout the Center. [Dkt. 1, Compl. ¶ 7].

---

[2] The Court assumes that the Defendants allege that Harty has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), although their motion is premised on dismissal pursuant to Rule 12(b)(1).

Moreover, Harty affirmed that he attempted to shop at the Center in November 2010, but was unable to approach the plaza from his car or to "even get out of [his] car" because the access aisles were too narrow for Harty to get into his wheelchair. [Dkt. 20-1, Harty Aff. ¶ 4]. Further, Harty has alleged that the steep curb cuts are too dangerous for him to climb without risking tipping his wheelchair or wheeling backward into cars, one curb cut was blocked at the top by a pole, some handicapped spaces are located too far from the entrances to the Center, and one access aisle leads to steps which Harty is unable to climb. [Dkt. 20-1, Harty Aff. ¶ 4].

These alleged defects mirror those that confronted the Second Circuit in *Harty v. Simon Property Group*. There, the Court noted that it was not persuaded that Harty's complaint would warrant dismissal for failure to adequately plead ADA violations that Harty personally encountered on his trip to the Nanuet Mall.[3] Moreover, the Second Circuit concluded that even if it shared defendant's concern that Harty had inadequately pleaded the ADA defects, it could not conclude that amendment of the complaint would be futile, because Harty provided additional details in his affidavit regarding the ADA violations he personally encountered at the Mall. *Harty*, 428 F. App'x at 73. Here, Plaintiff has listed specifically the defects he either encountered or was able to observe from

---

[3] Because the district court dismissed Harty's complaint for lack of standing, the Second Circuit concluded that the district court lacked jurisdiction to have ruled on defendant's alternative motion to dismiss for failure to state a claim. Because the district court found Harty to have had no standing and thus could not have ruled on defendants' 12(b)(6) motion, the Second Circuit concluded that there was no 12(b)(6) motion subject to review on appeal. The Second Circuit did note, however, its position on defendant's 12(b)(6) claim. *Harty*, 428 F. App'x at 72-73.

his car during his trip to the Bull's Head Shopping Center in November 2010 such that Defendants have been put on notice of potential deficiencies at their property.  Harty has expounded on his descriptions with more detail in his affidavit.  The Court concludes that Harty's complaint states with sufficient clarity the alleged defects at the Shopping Center such that it is not conclusory and, even if it does not, the Plaintiff would be readily able to cure any deficiencies in his complaint by amendment.

V. <u>Conclusion</u>

For the foregoing reasons, Defendants' [Dkt. 13] Motion to Dismiss the Complaint is DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 18, 2013