UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


```
------------------------------ x
                                :
  OWEN HARTY,                   :
                    Plaintiff,  :    Criminal No.
                                :  3:11-CV-01760(VLB)
              vs.               :
                                :  September 5, 2014
  BULL's HEAD REALTY, ET AL.,   :
                   Defendants.  :
                                :
------------------------------ x
```

Federal Building
450 Main Street
Hartford, Connecticut


TELEPHONE CONFERENCE

(Transcription from Electronic Recording)


Held Before:

THE HON. VANESSA L. BRYANT
United States District Judge



Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Street
Simsbury, CT  06070
860.651.0258

A P P E A R A N C E S:

   For the Plaintiff:

           THOMAS B. BACON, P.A.
           200 Country Club Road
           Royersford, Pennsylvania  19468
           610-952-0219
               BY:  JOHN F. WARD, ESQ.


   For the Defendants:

           BAI, POLLOCK, BLUEWEISS & MULCAHEY
           Two Corporate Drive
           Shelton, Connecticut  06584
           203-925-8100
               BY:  MICHAEL S. LYNCH, ESQ.
                    LEWIS S. LERMAN, ESQ.

```
 1              (Proceedings commenced at 10:05 a.m. via

 2        telephone.)

 3              THE COURT:  Good morning.  This is

 4        Judge Bryant.

 5              MR. WARD:  Good morning, your Honor.

 6              MR. LYNCH:  Good morning, your Honor.

 7              THE COURT:  May we have the parties

 8        identify themselves for the record, please?

 9              MR. WARD:  Your Honor, this John Ward,

10        counsel for the Plaintiff, Owen Harty.

11              THE COURT:  I'm sorry.  You said John

12        Ward?  Could you speak louder, please?

13              MR. WARD:  John Ward, W-A-R-D, yes.

14              THE COURT:  Hold on one second.  Okay.

15              That's John Ward for the Plaintiff?

16              MR. WARD:  Yes.

17              THE COURT:  And for the defense?

18              MR. LYNCH:  Good morning, your Honor.

19        Attorney Michael Lynch and Attorney Lewis Lerman

20        are here for the defendants.

21              THE COURT:  Excellent.  We are on the

22        record and we are recording this telephone

23        conversation, so if you could please identify

24        yourself for the record before you speak it would

25        be appreciated.
```

1           I understand the parties have

2    essentially reached an agreement.

3           MR. LYNCH:  Yes, your Honor.  This is

4    (unintelligible).  We have agreed upon a

5    resolution of the ADA claims and have agreed in

6    principle on a consent decree which all that

7    needs to be done is it needs to be signed by both

8    parties, but we have agreed upon all the terms of

9    the consent decree.  What is left is just the

10   attorney's fee claim that my understanding from

11   Mr. Ward is that we would like your Honor or a

12   magistrate to hear the attorney's fee petition.

13   We would like a hearing on that issue, and that's

14   the only thing that remains.

15           THE COURT:  What seems to be the crux

16   of the disagreement on the attorney's fees?

17           MR. LYNCH:  We just can't agree upon a

18   number.  We have had some discussions.  Yesterday

19   I spoke with Attorney Ward to see if we could

20   just resolve that outright, and I didn't give him

21   a specific number but I gave him an idea about

22   where we were coming from and we seem to be in a

23   different ballpark on the number, which is why I

24   think we need some court intervention on that.

25           Basically they have given us a demand

1       and we have simply not been able to agree that

2       that demand is something that we should be in a

3       position to pay.  There's issues about

4       duplication of work; there's issues about the

5       amount of duplication of work; there's issues

6       about the amount that they are requesting per

7       hour.  So, you know, unfortunately we would love

8       to be able to agree so that we just resolve this

9       once and for all but we haven't been able to do

10      that.

11                  THE COURT:  Alrighty.  Now, what is the

12      demand?

13                  MR. LYNCH:  I believe John may need to

14      speak but I thought it was in the high 70s,

15      70,000?

16                  MR. WARD:  Yes, the demand, your Honor,

17      the demand was in the nature of an arrangement

18      around $77,000 and, you know, there's been a lot

19      of motion practice in this case and as a result

20      the cost has been driven up considerably higher

21      than they would have been had we reached an

22      agreement in principle earlier in the case.  We

23      are seeking payment for our time, considerable

24      time we put into this case and at this point we

25      just have not been able to meet in the middle.

1          THE COURT:  What's the hourly rate

2     you're charging?

3          MR. WARD:  $425.

4          THE COURT:  And is there any paralegal

5     or other (unintelligible)?

6          MR. WARD:  No, your Honor.  There are

7     no charges for paralegal.  There are charges for

8     our expert and that is a flat fee for his

9     inspection and production of a Rule 34 inspection

10    report.  There are some travel costs as well.

11    But primarily, the primary component of our

12    demand would be the attorney's fees.

13         THE COURT:  Okay.  Is there any dispute

14    about the travel and the expert expense?

15         MR. LYNCH:  The only --

16         MR. WARD:  I'm not aware of any

17    dispute, your Honor.

18         MR. LYNCH:  The only question, your

19    Honor, I raised at the settlement conference was

20    that their expert traveled up here from South

21    Carolina and attorney -- there were five -- I'm

22    sorry, six cases that were brought in Connecticut

23    based upon Mr. Harty's one visit here in November

24    2011, I believe it was, and it was our -- we

25    thought possibly that this expert had come up

1        here to do inspections on more than one property

2        as long as he was up here.  Attorney Ward has

3        represented that that was not the case, so that

4        was our only question with respect to the

5        attorney's -- the expert's travel.

6               If he did do other properties while he

7        was here then our position would be that it was

8        not reasonable for him to charge just our case.

9               THE COURT:  Alrighty.  And we know that

10       that didn't occur, right?  We know that that did

11       not occur, so that's not an issue, right?

12              MR. LYNCH:  I will admit Attorney Ward

13       has represented that that did not occur, correct.

14              THE COURT:  Now -- and you have no

15       reason to believe otherwise, I'm assuming.

16              MR. LYNCH:  I just am surprised that

17       with cases all pending -- I'm very surprised that

18       an expert would come up here for one case when

19       six cases were brought at the same time.

20              THE COURT:  I'm not sure exactly when

21       that occurred --

22              MR. WARD:  Your Honor, I can address

23       that.

24              THE COURT:  I'm not sure exactly when

25       that occurred but my recollection of this case is

1    that fairly early on I had a status conference

2    with the parties and at that time I was told that

3    this matter could likely be resolved by having

4    the plaintiff's expert come up and walk the

5    defendant and perhaps their expert through the

6    property, and my recollection was that that was

7    to occur in some reasonably short timeframe.   Is

8    that what happened here?

9              MR. WARD:  Your Honor, we normally do

10   not -- this is John Ward -- we normally do not

11   conduct the inspection when there is a

12   (unintelligible) pending.  Defendants have twice

13   filed motions to dismiss and we reached agreement

14   on a time to conduct the Rule 34 inspection and

15   then did conduct that inspection, and once we

16   were at a point where we felt that we could do

17   that.  And there's simply no point in bringing an

18   expert all the way up from South Carolina to

19   inspect a property if there's a possibility that

20   the case will be dismissed.

21             And the reason that there were not

22   other inspections performed in the Connecticut

23   cases is that there were in fact motions to

24   dismiss, as I believe your Honor is aware, and

25   made have been before Judge Covello.

1          THE COURT:  Um-hum.  Okay.  All right.

2          And I'm assuming that plaintiff's

3     counsel has shared detailed billing records with

4     the defendant?

5          MR. LYNCH:  I'm sorry -- your Honor?

6          THE COURT:  Have you seen detailed

7     billing records?  You said that you were

8     concerned about some duplication?

9          MR. LYNCH:  No.  We have -- they have

10     provided a typewritten list but they have not

11     provided any of the backup invoices for the work

12     that was done.  So we have something that was

13     prepared probably within the last month in

14     preparation for the status or the settlement

15     conference, but we did not get timely invoices at

16     the time that these -- the work was done.

17          THE COURT:  Why do you believe there

18     was duplication?

19          MR. LYNCH:  Well, there was one entry,

20     your Honor, of 8 hours four times, which I think

21     was a duplication.  I also suspect that some of

22     the work that was billed -- it's very similar to

23     the 243 cases that Mr. Harty has brought in other

24     jurisdictions, and I'm not so sure that -- it

25     seems to me that some of the work is just a

1        duplication of what has already been done on

2        numerous other cases.

3                THE COURT:  Well, have you checked the

4        docket in those other cases and verified your

5        suspicion, or are you just surmising?

6                MR. LYNCH:  I'm basing that on what

7        other judges have said in other attorney's fee

8        petition claims and, yes, I have checked the

9        docket on many other cases.

10               THE COURT:  So are you saying that the

11       pleadings filed in this case were largely mirror

12       images or markups of pleadings filed in other

13       cases and you can identify those pleadings in

14       those cases and therefore argue to the factual

15       basis that the amount of time allegedly spent was

16       in excess of the actual amount of time spent?

17               MR. LYNCH:  Your Honor, yes, I am

18       saying that and that's the read that if we can't

19       resolve this attorney's fee claim ourselves,

20       that's why we would like the hearing so that we

21       can demonstrate to the court how these pleadings

22       match many of the pleadings filed in other cases.

23               THE COURT:  Have you demonstrated that

24       to Plaintiff's counsel?

25               MR. WARD:  Your Honor, no, they have

1    not.

2              MR. LYNCH:  I've not demonstrated it

3    but we certainly argued it at the settlement

4    conference.

5              THE COURT:  Well, you know, I mean

6    certainly the court can look at it itself but,

7    you know, if you feel you have documentation to

8    support your suspicion, is there a reason why the

9    efficient means of addressing this issue would

10   not be to sit down and walk through the basis of

11   your --

12             MR. LYNCH:  Well, your Honor, one thing

13   that I suggested to Attorney Ward yesterday is

14   that we instead of having your Honor conduct a

15   hearing on this -- because I do think it may be

16   something we should be able to resolve ourselves

17   -- I suggested that we have another settlement

18   conversation with Magistrate Smith who made that

19   offer when we had the first settlement conference

20   that if we wanted to come back he's more than

21   welcome to listen to us.  But Attorney Ward, and

22   I understand he's from Pennsylvania and didn't

23   want to come back for another settlement

24   conference, which is why I then said, well, let's

25   try to resolve this and I gave beliefs and ideas

1        on where we were coming from and he was not

2        interested in that.

3                So we've done in our opinion what we

4        can do to try to get this resolved.

5                THE COURT:  I'm not sure I agree with

6        you.  Again, if you can identify a pleading in

7        this case and a representation on the part of the

8        plaintiff's counsel that it took, let's say, 8

9        hours to draft that pleading, and you can present

10       -- you're going to have to do that either to me

11       or for Judge Smith anyway, and you can present

12       that to plaintiff's counsel and say, you know,

13       side by side, look at these two responses to the

14       motion to dismiss and show him that they're

15       virtually identical and say please explain to me

16       why it took you 8 hours to do something that your

17       secretary could have done on a word processing

18       document doing a global change.  You know, you

19       may get an explanation that allays your

20       suspicion, in which case the court would not need

21       to spend 4 hours doing that.

22               I mean that's what I would do.  You

23       know, if you say that the charge is excessive and

24       the plaintiff says the charge is not excessive,

25       then I'm going to ask you to document for me why

1    you believe it's excessive, and I'm going to look

2    at those two pleadings and I'm going to make my

3    own determination and that's going to take me

4    hours to do.  And I see no point in either myself

5    or Judge Smith doing that if you haven't made a

6    good faith effort with plaintiff's counsel to do

7    that yourselves.  And I understand there may be

8    some strategic preference to presenting that to

9    the court but the fact of the matter is at some

10   point or another you're going to have to present

11   it to the court if the court is going to have to

12   decide it, and when you do that you're going to

13   present it to plaintiff's counsel and he will

14   have the opportunity to challenge that just as he

15   would if you attempted to work it out amicably

16   amongst yourselves.

17           So one way or the other you're going to

18   have to present the facts, and it seems to me

19   consistent with Rule 1 that the preferred

20   approach would be for the parties to sit down and

21   look at that material themselves and then you can

22   say to the court we disagree whether 8 hours was

23   required to prepare this pleading because,

24   something very specific as opposed to, you know,

25   asking the court to be a clairvoyant.

1          MR. LYNCH:  Your Honor, I'm happy to do

2     that with Attorney Ward, but what I think I've

3     indicated is that the only thing that he's

4     provided is a typewritten outline of his fees

5     without giving us the actual fees when they were

6     done over time.  So it seems to me that just

7     before we can even do anything we need to see the

8     backup invoices from the time this case started

9     until the present rather than once piece of paper

10    that's prepared by an attorney about fees over

11    that period of time.

12         THE COURT:  Attorney Ward, what's your

13    response to that?

14         MR. WARD:  Your Honor, this is John

15    Ward.  May I speak?

16         THE COURT:  Yes.

17         MR. WARD:  Yes.  We submitted a

18    settlement demand to the defendants.  The

19    settlement demand consisted of an itemized

20    accounting of each and every cost that we have

21    incurred in this case.  The attorney's fees were

22    detailed line items by $1/10^{th}$ of an hour.  This is

23    how we keep track of our time.

24         And we submitted that to opposing

25    counsel.  We traveled five hours up to Hartford

```
1        for a settlement conference.  As we told you, our
2        demand was in the range of $77,000.  Defendant
3        offered to settle the case for no more than
4        nuisance value.  And essentially the position
5        they're taking is that --
6                  THE COURT:  I'm sorry.  Excuse me.  I
7        should not be privy to your settlement
8        discussions.  I think we, you know, I'd ask you
9        to be careful about that.  Now --
10                 MR. WARD:  Yes.
11                 THE COURT:  And I'm not hearing that
12       there's any objection to the time that you spent
13       traveling.  The question is whether or not you
14       provided detailed billing records.  And the
15       answer to that is yes or no?
16                 MR. WARD:  The answer, we provided
17       detailed billing records in the form of an
18       invoice which is simply just how we keep our
19       time.  I keep an invoice on the computer and I
20       make like items by tenth of an hour, and I don't
21       know if there's any other way to do that, and
22       never had an issue before even submitting this as
23       an attorney's fee position --
24                 THE COURT:  All right.  So what you --
25                 MR. WARD:  I've never had an issue.
```

```
1              THE COURT:  So what you have provided
2    is an itemization showing the dates on which you
3    did work in this case, the work you did on those
4    days and the amount of time you spent doing that
5    work in this case.
6              MR. WARD:  Yes, your Honor.  And I
7    wanted to make one point, and I hope I'm not
8    straying into an area where I shouldn't with
9    regard to your most recent comment, but the gap
10   between our positions is far greater than a very
11   minimal charge for expert travel and 8 hours on a
12   brief.  I mean we are far, far apart.
13             And essentially defendant has taken the
14   position was that after fighting tooth and nail
15   in this case on every issue, that now they want
16   to settle the case for an amount -- well, I don't
17   want to get into that, but as if we had not
18   engaged in all of --
19             THE COURT:  All right.  But --
20             MR. WARD:  -- (unintelligible)
21   agreeable from the start.
22             MR. LYNCH:  Your Honor, can I just
23   respond to that because I think --
24             THE COURT:  No, no, no, because I
25   disregarded it, all right?
```

```
 1              MR. LYNCH:  Right.

 2              THE COURT:  What I'm focused on are the

 3      logistics of resolving the attorney fee issue and

 4      not, you know, the personality disputes and that

 5      kind of thing.  Okay?

 6              So, Attorney Ward, what I understand is

 7      that you have produced detailed billing records

 8      in the -- to the extent you have them, you have

 9      produced billing records in the most detailed

10      manner that you have them.  Is that accurate?

11              MR. WARD:  Yes.  The only thing we have

12      not produced would be hotel bills for the expert,

13      hotel bills for myself, and invoice from our

14      expert.  Everything else I believe has been

15      provided to the defendant.

16              THE COURT:  Do you have a computerized

17      billing system?

18              MR. WARD:  No, we do not have a

19      computerized billing system.  I make line entries

20      on the word processing document.  I have a solo

21      practice, your Honor.  I don't have a -- I'm

22      very, very competent in word processing and I do

23      my own time accounting.  I don't have anyone do

24      it for me, nor do I use a program for that.

25              THE COURT:  Alrighty.  So it sounds
```

1      like there isn't anything available other than

2      what's been produced.

3              MR. WARD:  Other than what I

4      identified, your Honor, yes, that's correct.

5              THE COURT:  Alrighty.  And there's no

6      dispute about the hotel bills or the travel cost,

7      is there?  Or is -- tell me whether there is or

8      there is not.  Do you want those records as well?

9              MR. LYNCH:  Yeah, I would say that it

10     would be nice to have those records.  I wasn't

11     aware that Attorney Ward -- I guess he did some

12     settlement conference, but yes, I think that if

13     he's making a claim for a hotel I'd like to see

14     the backup for it.

15             THE COURT:  Why?

16             MR. LYNCH:  To make sure that it's a

17     reasonable expense.

18             THE COURT:  A reasonable expense?

19             MR. LYNCH:  Well, for example, I'm

20     going to a deposition in a couple of weeks and

21     I'm not going to spend $800 on a hotel --

22             THE COURT:  Do you have reason -- well,

23     is there something about the bill that suggests

24     that that occurred?

25             MR. LYNCH:  Your Honor, I don't have it

1        in front of me and I don't recall what the amount

2        was.  So maybe we can resolve that issue but I

3        think, you know, we have clients that we would

4        like to make sure that we document everything to

5        let them know that we are doing what we need to

6        do to defend a claim.

7                   MR. WARD:  Your Honor, if I may, the

8        amount in question with regard to the expert's

9        travel expenses, this expert resides in South

10       Carolina and traveled by air to Hartford,

11       Connecticut.  He inspected the property, he

12       stayed overnight in a hotel.  He returned to

13       South Carolina.  The grand total for our expenses

14       that we're claiming is $500 for hotel and

15       airfare.  I do not see how anyone could

16       reasonably consider that as an excessive charge.

17                   MR. LYNCH:  I don't say -- I'm not

18       saying that I do consider that to be excessive.

19       I just don't see the harm in giving us what is

20       backup for the claims that you're making.

21                   THE COURT:  Because it takes more time

22       that you're --

23                   MR. WARD:  Your Honor, I didn't say

24       there was any harm in that.  We just haven't

25       produced it yet because we are making a

```
 1          settlement demand.  My understanding is

 2          settlement demand is just that, a demand.  It's

 3          not a complete accounting of our -- a copy of

 4          every invoice in the case.

 5                    THE COURT:  Okay.  But the reason being

 6          is that it takes more time, which is going to

 7          cost your client more money, and there does not

 8          appear to be any reason to challenge the amount.

 9          I mean you think a $500 charge for expert travel

10          from South Carolina and an overnight stay is

11          excessive and requires documentation to assure

12          that that is not excessive?

13                    MR. LYNCH:  I don't know how to

14          respond, your Honor.  I think that it seems

15          reasonable on its face, but I just --

16                    THE COURT:  Well, if it seems

17          reasonable on its face, what is the justification

18          for requiring counsel to spend, I don't know, 15,

19          20 minutes pulling out the records, getting it

20          duplicated, creating a document to convey it and

21          attach it as an exhibit?  I mean what is that

22          going to cost your client?

23                    MR. LYNCH:  Your Honor, it seems to me

24          that a secretary in his office could get the

25          invoice and fax it to us in minutes.  That's
```

1          really -- that is really not the thrust of our

2          position in terms of defending the attorney's fee

3          claim.  It's not that cost.

4                    THE COURT:  Well, that isn't the way I

5          would expect an attorney to substantiate his

6          claim for a fee.  I would expect the attorney to

7          take the bill, get the documentation, create a

8          table a contents or a list of exhibits and to

9          cite from the bill to the exhibit list so that

10         there is one document that comprehensively

11         requests a certain amount and identifies the

12         factual basis for the request that's being made.

13         And that is not something that a secretary is

14         going to do; that's something that an attorney is

15         going to do or at the very least copiously review

16         if the secretary did it.

17                    So if there is an expense that doesn't

18         seem to be unreasonable, I question the

19         reasonableness of requiring documentation for

20         that.

21                    I would encourage the two of you to

22         discuss this in detail, certainly before filing

23         any motions.  Because if you were to file a

24         motion asking the court to resolve it, whether it

25         be myself or Judge Smith, you're going to have to

```
1        document your position.  So you may as well

2        document your positions, discuss it amongst

3        yourselves, and then and only then raise with the

4        court the discrete issues over which you

5        disagree.

6                    And in view of the age of this case, it

7        should be done in the next couple of weeks.

8                    MR. WARD:  Your Honor, plaintiff is

9        prepared to do that.  That's not a problem.

10                   MR. LYNCH:  And we are prepared to do

11       that, your Honor, as well.

12                   THE COURT:  All right.  Well, I will be

13       looking for -- not next Friday, not the Friday

14       before, but the Monday after that for either a

15       withdrawal of this case or a motion for

16       attorney's fees with documentation which would

17       enable me to make a ruling.  I don't necessarily

18       think I need a hearing.  To the extent I need to

19       communicate with you I can do it over the phone

20       and avoid the incurrence of additional travel

21       expense.

22                   MR. WARD:  Your Honor, we appreciate

23       that.  If we could have two weeks from today

24       would that be a reasonable amount of time?

25                   THE COURT:  I'm giving you two weeks
```

1       from Monday, this coming Monday.

2                   MR. WARD:  Oh, (inaudible) Monday.  I

3       wasn't sure whether you -- which Monday you were

4       speaking of so that's why I wanted to clarify.

5                   THE COURT:  Is that enough time?  Do

6       you need three weeks?

7                   MR. LYNCH:  That's enough time for

8       plaintiff's counsel and I to have a discussion to

9       see if we can get these claims resolved.

10                  THE COURT:  All right.  Two weeks for

11      this discussion and one week to file the motion.

12      One additional week.  All right?

13                  MR. WARD:  Yes, your Honor, that should

14      be --

15                  THE COURT:  14 days for the discussion

16      --

17                  MR. LYNCH:  Your Honor, when will a

18      response be required by us in --

19                  THE COURT:  7 days after that.

20                  MR. LYNCH:  I'm sorry?

21                  THE COURT:  7 days after that.

22                  MR. LYNCH:  Okay.

23                  THE COURT:  14 days to have the

24      discussion, 21 days to file the motions, 28 days

25      to respond.

1          MR. LYNCH:  And your Honor, for the

2     record, we would prefer to have a hearing on some

3     of the issues, but if you're telling us that

4     that's not going to happen I just want to make

5     our position known that we do think a hearing

6     would be in our client's best interest here.

7          THE COURT:  I am not telling you that I

8     will not hold a hearing.  I am telling you that I

9     would hold a hearing if the documented basis for

10    your objection requires further inquiry.

11         MR. LYNCH:  Okay.

12         THE COURT:  But given --

13         MR. WARD:  And your Honor, this is John

14    Ward, while plaintiff is not averse to attending

15    a hearing in Hartford, we would be seeking time

16    -- excuse me, seeking payment for the, again, of

17    the hotel cost and considerable time to travel to

18    Hartford and back.

19         THE COURT:  That seems to be

20    appropriate.

21         Okay.  So I just want to make sure that

22    I'm clear that to the extent there is an

23    objection to a charge that the basis for that

24    objection and any documentation to support the

25    object be filed.

```
1              MR. LYNCH:  Yes, your Honor.

2              THE COURT:  All right?  And if that

3      were to occur I doubt that there would be a need

4      for a hearing.  If the filing is deficient, then

5      I would have no factual basis to question or I

6      would have no factual basis to feel that

7      questioning the parties further on the issue

8      would be fruitful.

9              MR. WARD:  And your Honor, plaintiff

10     agrees with what the court is saying with regard

11     to the ability to decide this matter on the

12     pleadings.  We are perfectly content with filing.

13     If we do have to go that far, if we get to file a

14     motion for attorney's fees, we are not seeking a

15     hearing and we do not see any need for that.

16             THE COURT:  Alrighty.  Thank you both

17     very much.  I will enter an order in accordance

18     with your discussion.

19             MR. LYNCH:  Thank you.

20             MR. WARD:  Thank you, your Honor.

21             THE COURT:  You're welcome.

22             Off the record.

23             (Proceedings concluded at 10:32 a.m.)

24

25
```

<u>CERTIFICATE</u>

        I hereby certify that the foregoing 25 pages are a complete and accurate transcription to the best of my ability of the electronic recording of the Telephone Conference in re:  OWEN HARTY vs. BULL'S HEAD REALTY, ET AL, Civil No. 3:11-CV-01760 (VLB) held before The Hon. Vanessa L. Bryant, United States District Judge, in Hartford, Connecticut, on September 5, 2014.


s/s_____          _____

Suzanne Benoit, Transcriber          Date