**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| OWEN HARTY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:11-CV-01760 (VLB) |
| v. | : | |
| | : | |
| BULL'S HEAD REALTY and | : | |
| JAMES GRUNBERGER, | : | |
| Defendants. | : | March 11, 2015 |

**ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

Before the Court is Plaintiff's Motion for an order awarding attorney's fees pursuant to his action against Defendants under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189, et seq. ("ADA"). For the reasons set forth below, Plaintiff's Motion is GRANTED in part and DENIED in part.

**I. Background**

On November 13, 2011, Plaintiff Owen Harty ("Mr. Harty" or "Plaintiff") filed this action against Bull's Head Realty and James Grunberger (collectively, the "Defendants") alleging violations of Title III of the ADA. Specifically, Mr. Harty, who is "mobility impaired and is bound to ambulate in a scooter or with other assistive devices," claimed that he encountered multiple architectural barriers upon visiting Defendants' shopping center (the "Center") in November 2010. [Dkt. 1, Compl., at ¶ 1.] These barriers, which were also later noted in a preliminary inspection of the Center, included (a) curb cuts with steep, non-compliant slopes; (b) non-compliant access aisles; (c) handicapped-designated parking spaces without signs; (d) non-compliant changes in level; (e) ramps

without handrails; (f) disabled parking spaces which are too far away from the entrances of the facility; and (g) handicapped-designated parking spaces which are improperly dispersed throughout the Center.  [*Id.* at ¶ 7; Dkt. 50-11, Ex. F-2.] Plaintiff claimed that these barriers discriminated against him on the basis of his disability, endangered his safety, and prevented him from returning to the Center to enjoy the goods and services offered there.  [Dkt. 1 at ¶ 6.]

In April 2012, Defendants moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, on the basis that Mr. Harty lacked standing to bring the action because he had not sufficiently alleged an intent to return to the premises in the future, had omitted any allegation that he actually patronized or attempted to patronize the Shopping Center in good faith, and had not alleged that he regularly, or with any frequency, visited or would visit the area.  [Dkt. 13.]  The Court denied Defendants' Motion, finding that Mr. Harty had sufficiently alleged an intention to return to the Center consistent with Second Circuit precedent in another of Mr. Harty's cases, and subsequently denied Defendants' Motion for a More Definite Statement [Dkt. 30] and a second Motion to Dismiss [Dkt. 42] on the same basis.  [Dkts. 21, 40, 43.] Meanwhile, litigation ensued over the scope of the inspection of the Center.  [Dkt. 37.]  On May 1, 2013, the Court conducted a telephonic conference at which the parties agreed that an inspection of the Center with their respective experts could lead to the resolution of the case.  [Dkts. 39, 40].  However, even after the inspection was conducted, the parties were unable to resolve the matter, and in February 2014 Plaintiff filed a Motion for Summary Judgment.  [Dkt. 50.]

In August 2014, while that Motion was still pending, the parties participated in a settlement conference with Magistrate Judge Thomas P. Smith and entered into a consent decree ("Consent Decree") in which Defendants agreed to make certain modifications to the Center. [Dkt. 64 at 3.] The Plaintiff now seeks attorney's fees and costs in the amount of $68,870.01.[1]

## II. Discussion

### A. Preliminary Matters: Defendants' General Objections

#### 1. Discretionary denial of fees

The ADA is a fee-shifting statute and the Court has discretion to award attorney's fees to a prevailing party in an ADA action. *See, e.g., E\*Trade Fin. Corp. v. Deutsche Bank AG,* 374 F. App'x 119, 124 (2d Cir. 2010). 42 U.S.C. § 12205 provides in relevant part:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs....

42 U.S.C. § 12205. When the prevailing party in a civil rights action (such as a suit under the ADA) is the plaintiff, attorney's fees and costs should normally be awarded "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (citation and internal quotation marks omitted); *accord Buckhannon Bd. and Care Home, Inc. v. W. Virginia Dept.*

---

[1] **This includes the $64,620.01 reflected in Plaintiff's 9/17/14 invoice, attached to Dkt. 64 as Ex. F, and Plaintiff's further demand for $4,250.00 for attorney's fees incurred by drafting and filing the instant Motion. [Dkt. 65 at 20.]**

*of Health and Human Resources*, 532 U.S. 598, 603 n. 4 (2001) (applying *Hensley* to § 12205 of the ADA).

Here, Defendants ask the Court to exercise its discretion to award no fees or only nominal fees because they argue that Plaintiff's suit was meritless and should have been dismissed, and further argue that Plaintiff's history of filing hundreds of ADA lawsuits across the country suggests that he filed the present claim for improper purposes. [Dkt. 64 at 2–6.] Plaintiff maintains that Defendants' arguments are irrelevant to Plaintiff's entitlement to attorney's fees. [Dkt. 65 at 4–11.] The Court agrees.

First, Defendants' various contentions that Mr. Harty's underlying claim would have failed had the case proceeded to trial are both unpersuasive and improperly raised. Defendants argue that the Court erred in ruling that Plaintiff had standing to commence this action, that Mr. Harty allegedly took subsequent actions that weakened or negated the strength of his claim, and that in over 25 years, not one "single person [has] encountered a problem with access to or use of their Center" other than Mr. Harty. [Dkt. 64 at 5.] None of these issues can be considered by the Court on this Motion, as doing so would require the Court to make findings of fact, the basis for which are not before the Court. Defendants appear to be trying to litigate (and to some extent relitigate) the case on its merits—an opportunity Defendants forfeited when they agreed to settle the case and entered into the Consent Decree. If Defendants felt that the Court's finding of standing was incorrect, or that Mr. Harty's claim was ultimately meritless, their

4

recourse would have been to proceed to trial, and then appeal any adverse determination.

Defendants' position that Plaintiff is a "serial litigator" is also inapposite to a consideration of whether this case was filed for improper purposes.  As Plaintiff points out, the central issue is not whether Plaintiff has filed other ADA lawsuits, but whether Defendants' facility is in compliance with the ADA.  [Dkt. 65 at 8]; *see Access 4 All, Inc. v. G & T Consulting Co.*, 06 CIV. 13736 (DF), 2008 WL 851918, at *8, n. 2 (S.D.N.Y. Mar. 28, 2008) (noting that even where the "sheer number" of ADA lawsuits filed by a plaintiff renders their intention to return less plausible, "[t]his does not mean, however, that, whenever [plaintiff] files an affidavit in one of these cases, attesting to the frequency with which he has visited a particular facility and his reasons for having done so, the Court should simply reject his statements as incredible. Rather, the circumstances of the particular case— including the facial plausibility and adequacy of the affidavit at issue, as well as the existence of any conflicting testimony or other evidence—should control the extent to which the Court credits his sworn statements."). The Court has already ruled on the facial plausibility of Plaintiff's claims in the present case.  [Dkts. 21, 40, 43.]  Furthermore, Defendants do not offer any facts beyond Mr. Harty's voluminous litigation history that indicate the action before *this* Court was unwarranted by existing law, based on frivolous arguments, or filed solely to harass Defendants.  [Dkt. 64 at 6.]  They only argue, impermissibly, that they believe Mr. Harty would not have prevailed at trial.  These grounds do not

represent "special circumstances" upon which to deny Plaintiff's fee request as a matter of discretion.

    2.  **Fees and costs incurred after December 2013 settlement discussions**

    Defendants also argue that the Court should limit Plaintiff's request for attorney's fees and costs to those incurred before December 5, 2013, which Defendants claim is "the date when plaintiff's counsel rejected defense counsel's offer to make the minor modifications ultimately agreed to by both parties and set forth in the Consent Decree."  [Dkt. 64 at 6–7.]  Defendants contend that the work performed after the date of this offer "was simply unjustified given the defendant's offer to make all the modifications that were eventually set forth in the Consent Decree."  [*Id.* at 7.]  Plaintiff's position is that the parties' December 2013 negotiations failed because Defendants objected to Plaintiff's proposed demand for attorney's fees and expenses, which according to Plaintiff were approximately $15,000 at that time.  [Dkt. 65 at 2–3.]  Defendants have not subsequently disputed this assertion, and in fact, the affidavit by Defendants' counsel Mr. Lynch submitted in support of Defendants' objection concedes that Plaintiff was seeking attorney's fees "of a substantial amount, so the case could not be resolved at that time."  [Dkt. 64, Ex. C at ¶ 10.]

    The Court is unpersuaded by Defendants' objection to the fees and costs incurred after December 5, 2013.  First, the Court does not see how the offer made by Defendants in 2013, which did not include attorney's fees, can properly be compared to what Plaintiff may be able to recoup today, which includes such fees as well as costs.  Furthermore, the judicial system does not require litigants

to wager the ultimate value of their claims in such a way.  The Second Circuit has held that "[a] district court should not rely on informal negotiations and hindsight to determine whether further litigation was warranted and, accordingly, whether attorney's fees should be awarded.  Otherwise, plaintiffs with meritorious claims may be improperly dissuaded from pressing forward with their litigation."  *Ortiz v. Regan*, 980 F.2d 138, 140–41 (2d Cir. 1992).  Rather, the rule is that "[a]bsent a showing of bad faith, a party's declining settlement offers should [not] operate to reduce an otherwise appropriate fee award."  *Id.*  (quoting *Cowan v. Prudential Ins. Co. of America,* 728 F.Supp. 87, 92 (D. Conn. 1990), *rev'd on other grounds,* 935 F.2d 522 (2d Cir.1991)).  Defendants do not submit any facts suggesting Plaintiff rejected Defendants' December 2013 settlement offer in order to drive up attorney's fees, or that the rejection was otherwise made in bad faith.  Nor does the Court have any reason to believe that Plaintiff's rejection, if it was indeed a rejection, was unreasonable at the time.  Moreover, absent an offer of judgment under Federal Rule of Civil Procedure 68, the Court cannot properly determine the finality of any offer that Defendants claim was made.

   3.  Errors and revisions in the Final Invoice

   Defendants further argue that certain changes and errors in Plaintiff's invoice "raise important questions concerning the validity of the entire bill" and "how many other 'mistakes' were made."  [Dkt. 64 at 9–10.]  Plaintiff defends his adjustments and asserts that any errors were *de minimus*.  [Dkt. 64 at 12–15.]

   Defendants point out that Plaintiff's counsel initially miscalculated Plaintiff's expert's travel costs, which were incurred when Plaintiff's expert

traveled to Connecticut to inspect Defendants' Center, and were initially stated to be $500.  [Dkt. 64 at 10.]  This issue was first raised by Defendants during the status conference held with the Court in September 2014.  [*Id.*]  Subsequent to that conference, Plaintiff's counsel conceded that he had in fact erroneously charged all of the expert's travel costs to Defendants, despite the fact that the expert had performed work on another case during the trip in question.  [Dkt. 65 at 13.]  Presumably the expert's bill would have reflected work on both cases, and Plaintiff's counsel has not offered an explanation for how the error occurred.  In any case, he agreed to reduce the expert's travel expenses by fifty percent.  [*Id.*]  The total expert's travel costs ultimately came to $785, which after a fifty percent reduction came to a cost to Defendants of $392.50.  [*Id.*]  Defendants do not appear to dispute that this is an unreasonable amount for the expert to have spent for travel and accommodations during his trip from South Carolina to Connecticut, but argue that this error suggests bad faith and calls the Plaintiff's other calculations into question.  [Dkt. 64 at 10.]  However, the Court does not share Defendants' concern that this error alone impeaches the credibility of the Final Invoice as a whole, and accepts Plaintiff's counsel's representation that his mistake in calculating expert Mr. Baez's travel costs was innocent, subsequently investigated and corrected.  [Dkt. 65 at 13.]

Defendants also point out that Plaintiff's final invoice, which was submitted to Defendants on September 17, 2014 (the "Final Invoice") showed "significant changes" when compared to the initial invoice that Plaintiff shared with Defendants on August 1, 2014 (the "Initial Invoice").  [Dkt. 64 at 8–9 and Exs. F,

G.]  Defendants note that it appears the changes were made in response to Defendants' criticisms about the time billed to draft Plaintiff's opposition to Defendants' Motion to Dismiss, and that the revised entries "undermine plaintiff's counsel's claim that the time entries were contemporaneous and accurate."  [*Id.* at 8–9.]  Plaintiff maintains that the revisions "were made in a good faith effort to enhance settlement efforts and [to] assure the accuracy of Plaintiff's claim for fees and expenses."  [Dkt. 65 at 14.]  Plaintiff also objects to Defendants' attempt to introduce the Initial Invoice on the ground that it is evidence of compromise negotiations barred by Federal Rule of Civil Procedure 408.

To begin, the Court notes that the Second Circuit has not explicitly ruled on whether or to what extent the Federal Rules of Evidence govern disputes over attorney's fees.  *See Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 352 (2d Cir. 2009).  However, the Second Circuit has acknowledged that assuming "courts may employ hearsay within reasonable limits and have considerable discretion over adherence to Federal Rules" in determining questions of attorney's fees, "the rule forbidding such use of settlement negotiations is a matter of fundamental policy."  *Id.*

Rule 408 states, in relevant part:

> Evidence of the following is not admissible . . . either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction: (1) furnishing, promising, or offering— or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim. . . [but] (b) The court may admit this evidence for another purpose, such as proving a

**9**

> **witness's bias or prejudice, negating a contention of
> undue delay, or proving an effort to obstruct a criminal
> investigation or prosecution.**

Fed R. Evid. 408.  The Rule bars the admission of most evidence of offers of compromise and settlement in furtherance of "the public policy favoring the compromise and settlement of disputes."  *See* Fed. R. Evid. 408, Advisory Committee Notes (1972 Proposed Rules).  In part, the purpose of Rule 408 is to "codif[y] the general presumption that the risk of unfair prejudice is too great when the jury is presented evidence of an offer to settle a claim for which it must determine liability; in that situation, the jury may infer that the party offering to settle perceived a weakness in its claim or defense."  *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 739 F. Supp. 2d 125, 133 (D. Conn. 2010).

In this light, the Court finds that consideration of Plaintiff's Initial Invoice does not contravene the fundamental purpose of Rule 408.  The Initial Invoice is not a statement about the validity or amount of the claims at issue in the underlying case; it is more accurately characterized as a statement regarding the amount of fees and costs incurred *as a result* of litigating those claims. Furthermore, neither party suggests facts indicating that Plaintiff's presentation of the attorney's fee amount in August 2014 was an offer to compromise—for example, in the context of a statement that although the total fees and costs were $77,330, Plaintiff was willing to accept less.  Instead, the Initial Invoice appears to have been presented as a statement of fact that to the best of Plaintiff's knowledge on that date, the total fees and costs incurred totaled $77,330.  In this context, the policy concerns animating the Rule are not present, because there is

no risk that consideration of the Initial Invoice would affect the perceived value, or lack thereof, of Plaintiff's substantive claims.  Instead, the Initial Invoice is more appropriately considered as being offered for "another purpose" other than "to prove liability for or invalidity of the claim or its amount" under Rule 408(b): to wit, for the purpose of determining the reasonableness of Plaintiff's demand for attorney's fees.

However, the Court is persuaded by Plaintiff's position that the changes in the Initial Invoice "merely demonstrate[ ] that Mr. Ward investigated and responded to the arguments made by defense counsel during the settlement conference."  [Dkt. 65 at 15.]  Defendants characterize Plaintiff's reductions as evidence that Plaintiff went back into the contemporaneous entries and fabricated them or tampered with them to make them appear more reasonable.  [Dkt. 64 at 8– 9.]  However, from the Court's review it appears that the Final Invoice merely represents the wholesale elimination of certain billed entries, and the application of a standard formula to other entries, in order to systematically reduce certain charges for designated categories of work.  Plaintiff is clear in his representations to opposing counsel and to the Court that the Final Invoice is an effort to settle the fee dispute, not revise history.  [Dkt. 65 at 12–14; Dkt. 64, Ex. F at 1.]

Nevertheless, the Court finds that Plaintiff's attorney's formula for reducing the hours billed to Plaintiff's amended opposition brief, which allots 24 minutes per page for reviewing and editing portions of arguments used in other cases, is unreasonable.  [Dkt. 65 at 13.]  First, it should be noted that the brief in dispute

was an *amended* submission filed after the Court rejected Plaintiff's original memorandum for numerous deficiencies. [Dkt. 19.] Upon review, the amended brief is merely a pared-down version of that first submission, with only one new section which itself was taken from a brief filed by Plaintiff in a different case. [Dkt. 20.] In fact, a comparison of the amended opposition brief filed in this case to briefs authored by the Plaintiff in other cases [Dkt. 64, Ex. I] reveals that every single page of the brief at issue was adopted, often verbatim, from briefs filed by the Plaintiff in those other cases. Specifically, Plantiff's *Bull's Head Realty* brief is substantively identical—with the exception of portions of the fact section and the substitution of the words "national restaurant chain" for "shopping center"— to the first 30 pages of the brief submitted by Plaintiff's counsel in *Owen Harty v. GDR Associates, Inc.*, No. 3:11-cv-01407(AVC). [Dkt. 64, Ex. I at 37–67.] The only section of Plaintiff's *Bull's Head Realty* brief that is not represented in the *GDR Associates* brief can be found in another brief submitted by Plaintiff's counsel in *Harty v. Harwill Homes, Inc.*, No. 3:11-cv-01368(AVC). [*Id.* at 99–104.]

The Court recognizes that even when an attorney benefits from work they have done in previous cases, a diligent lawyer will expend some time reviewing and revising his written product. However, the Court does not believe it is reasonable to devote almost half an hour per page to doing so, especially where, as it appears here, no substantial changes or updates were made. The Court therefore declines to apply Plaintiff's formula and will reduce the billable hours for work on the opposition brief to 5 hours. The Court believes this reasonably reflects the amount of time Mr. Ward would have taken to review the Court's

Order rejecting the original submission, editing the brief—the contents of which were obviously familiar to him and, having been assembled just a few months prior, likely up-to-date—and proofreading it before its resubmission.

### B. Presumptively Reasonable Fee Analysis

Having addressed Defendants' general objections, the Court now considers the reasonableness of Plaintiff's fee demand.  As noted above, the parties do not dispute that Plaintiff is a prevailing party for purposes of determining entitlement to attorney's fees.  [Dkt. 64 at 5.]  The Court is thus left to determine whether Plaintiff's hourly rate of $425 and the 155.7[2] hours he billed are reasonable.

"To determine reasonable attorney's fees, the Second Circuit has historically implemented the lodestar method of examining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Silver v. Law Offices Howard Lee Schiff, P.C.,* No. 3:09CV912 (PCD), 2010 WL 5140851, at *1 (D. Conn. Dec. 15, 2010) (internal quotation marks and citation omitted).  Recently, however, "the [Second Circuit] determined that '[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness.'" *Id.*  (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 182 (2d Cir. 2008)).  "In place of the lodestar method, the court used the 'presumptively reasonable fee' standard." *Id.*

---

[2] Again, this billable hours figure includes the 145.7 hours included in the Final Invoice [Dkt. 64, Ex. F at 6] and the 10 hours Plaintiff's counsel represents he expended to complete his Motion for Attorney's Fees.  [Dkt. 65 at 20.]

The Second Circuit has subsequently noted that "[w]hile the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method." *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 417 n. 2 (2d Cir. 2010). In *Arbor Hill,* the Second Circuit instructed that:

> [T]he better course—and the one most consistent with attorney's fees jurisprudence—is for the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill,* 522 F.3d at 190.  Consequently, courts have described the "presumptively reasonable fee" analysis as a "process" that is "really a four-step one, as the court must: '(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.'"  *Vereen v. Siegler,* No. 3:07CV1898, 2011 WL 2457534, at *1 (D. Conn. June 16, 2011) (quoting *Adorno v. Port Authority of New York and New Jersey,* 685 F. Supp. 2d 507, 510 (S.D.N.Y. 2010)).

1.  **Reasonable Hourly Rate**

In *Arbor Hill,* the Second Circuit indicated that the relevant factors in determining the reasonable hourly rate were articulated in *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson,* 488 F.2d at 717–19 (cited in *Arbor Hill*, 522 F.3d at 186 n. 3).  Reasonable hourly rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 (1984). "The determination of a prevailing rate requires a 'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" *M.K. ex rel. K. v. Sergi,* 578 F. Supp. 2d 425, 427 (D. Conn. 2008) (quoting *Farbotko v. Clinton Cnty. of New York,* 433 F.3d 204, 209 (2d Cir. 2005)).

The Second Circuit has held that when determining the prevailing market rate, district courts "should generally use the hourly rates employed in the district in which the reviewing court sits." *Arbor Hill,* 522 F.3d at 192 (quoting *In re "Agent Orange" Prods. Liab. Litig.,* 818 F.2d 226, 232 (2d Cir.1987)); *see also Simmons v. New York City Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009).  The

strong presumption that "a reasonable, paying client would in most cases hire counsel from within his district" can be rebutted "only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill."  *Arbor Hill*, 522 F.3d at 191.  Specifically, the Second Circuit has held that in order to overcome this "forum rule," the fee applicant "must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."  *Simmons*, 575 F.3d at 175.  "Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case . . . or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise."  *Id.* at 176 (internal citation omitted).

Plaintiff has requested a rate of $425 per hour.  [Dkt. 64 at Ex. F.]  In support of this fee rate, Plaintiff attests that he is "principal attorney of the firm of John F. Ward, Esquire, PLLC, and of counsel to Thomas B. Bacon, P.A." and that he has been a licensed attorney since 1997.  [Dkt. 65 at 17.]  He also avers that he "has specialized in civil rights litigation throughout his sixteen-year career and has litigated more than sixty (60) cases under Title III of the ADA on behalf of various plaintiffs in federal district courts."  [*Id.*]  Curiously, although Plaintiff's case was filed in the District of Connecticut, and Plaintiff's counsel, who appears *pro hac vice*, is admitted to practice in the Eastern District of Pennsylvania,

Plaintiff's counsel supports his rate request by citing inexplicably and exclusively to case law from the Southern District of New York determining rates in that District.  [Dkt. 65 at 15–17.]  Defendants object to Plaintiff's requested rate as being "excessive for the District of Connecticut," specifically in light of the fact that "[t]his case was not difficult or complex, and the claims were relatively straightforward."  [Dkt. 64 at 11.]  Neither party appears to suggest that the Court should apply the customary hourly rate in the Eastern District of Pennsylvania, within which Plaintiff's Counsel's office appears to be located.  Furthermore, the Court is not persuaded by Plaintiff's contention that he retained out-of-district counsel "as a last resort . . . because he could not locate qualified counsel in this District," when that contention is based only on the fact that Plaintiff's initial choice of counsel within the District of Connecticut "proved to be unwilling or unable to handle the responsibilities of this case on a timely basis."  [Dkt. 65 at 18.]  Numerous members of the Connecticut bar would be qualified to prosecute this case and the bar is not so flush with cases that a search for Connecticut counsel would have been unavailing.  Therefore, the Court will adhere to the forum rule and looks to the prevailing rates in the District of Connecticut to determine whether Plaintiff's counsel's hourly fee is reasonable.

Defendants contend that their counsel's rate of $175 per hour is indicative of the appropriate attorney's fee for this claim, and urges the Court to determine that an hourly fee of between $175 and $250 is appropriate.  [Dkt. 64 at 12.]  The Court agrees with Defendants that Plaintiff's requested hourly fee is in excess of the prevailing rates in this District for counsel of similar experience and skill, but

finds that Plaintiff's counsel should not be limited to the rate suggested by Defendants.  Although there are a limited number of recent District of Connecticut cases for attorney's fees under the ADA, the Court has conducted a review of recent attorney's fee awards for private counsel who prosecute plaintiff's rights cases in this District and has determined that $375 is a more appropriate hourly rate.  *See, e.g., Vereen v. Siegler*, No. 3:07CV1898 (HBF), 2011 WL 2457534, at *2–3 (D. Conn. June 16, 2011) (awarding $400 per hour to a plaintiff's civil rights lawyer with 43 years of experience); *Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, No. 3:03CV599 (CFD), 2011 WL 721582, at * 5–6 (D. Conn. Feb. 22, 2011) (finding $325–$425 per hour to be reasonable for a partner, but reserving the upper end of that award range for partners with over 30 years' experience); *Negron v. Mallon Chevrolet, Inc.*, No. 3:08CV182 (TPS), 2012 WL 4358634, at *2 (D. Conn. Sept. 24, 2012) (noting that "the two preeminent consumer law attorneys" in the District were earning $350/hour and $325/hour).

    **2.  Reasonableness of time spent**

    "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994).  Defendants claim that the Final Invoice suffers from numerous "excessive, duplicative and vague" entries that should be reduced as unreasonable.  [Dkt. 65 at 12–14.]  The Court addresses each of Defendants' concerns below.

### i.  Time billed for reviewing the docket and file and for telephone conferences

Defendants, without pointing to the entries at issue, object to "all entries regarding the review of docket and file and telephone conferences" on the basis that they lack "any specific detail as to what was reviewed or discussed" and should therefore be disregarded as overly vague.  [Dkt. 64 at 12.]  Plaintiff argues that these entries should not be disregarded because "any such entries were made sparingly, involved small increments of time and were necessary under the circumstances."  [Dkt. 65 at 18.]  Furthermore, Plaintiff maintains that his entries for telephone conferences included references to the subject matter of each conference.  [*Id.*]

"Fees should not be awarded for time entries when the corresponding description of work performed is vague and therefore not susceptible to a determination of whether the time billed was reasonably expended."  *Connecticut Hosp. Ass'n v. O'Neill*, 891 F. Supp. 687, 690 (D. Conn. 1994) (internal quotations omitted and citation omitted).  As a general rule, "[e]ntries stating such vague references as 'review of file,' 'review of correspondence,' 'research,' 'conference with client,' and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter."  *Mr. and Mrs. B. v. Weston Bd. of Ed.*, 34 F. Supp. 2d 777, 781 (D. Conn. 1999) (citing *Connecticut Hospital Ass'n*, 891 F. Supp. at 691; *Ragin v. Harry Macklowe Real Estate Co.*, 870 F. Supp. 510 (S.D.N.Y. 1994); *Orshan v. Macchiarola*, 629 F. Supp. 1014 (E.D.N.Y. 1986)).  However, attorneys "are not required to provide the [c]ourt with a detailed accounting of each minute spent

performing a task in the case." *Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, No. CV 06-5487(AKT), 2008 WL 4453221, at *10 (E.D.N.Y. Sept. 30, 2008).  Instead, "the records produced should be specific enough to assess the amount of work performed."  *Id.*  A court may attempt to clarify vague entries by looking at the context of the adjacent entries.  *Connecticut Hosp. Ass'n,* 891 F. Supp. at 691.

Here, the Court noted two instances in which Plaintiff billed time to "review docket and file" and "review docket and order" without further elaboration.  [Dkt. 64, Ex. F, at 2 and 5.]  Considered in context, the first entry, on 7/2/12, is consistent with Plaintiff's explanation that he reviewed the docket and case file when he was assigned the case.  [Dkt. 65 at 18.]  This representation is buttressed by the record showing that Plaintiff's counsel filed his *pro hac vice* motion shortly after this time was billed.  [Dkt. 14.]  The second entry, on 8/6/14, clearly refers to the Order entered by Judge Smith on that date following the 8/5/14 settlement conference.   [Dkt. 57.]  The Court does not find that these two entries, which are easily contextualized by the record, support Defendants' request for a fee reduction.  Furthermore, the Court confirms that Plaintiff appears to have included the general subject matter of each telephone conference for which he billed, with the exception of the telephonic status conference held with the Court on 9/5/14—the transcript for which is included, in full, as Exhibit H to Defendants' opposition, and the content of which is verifiable and thus eminently "susceptible to a determination of whether the time billed was reasonably expended."  *Connecticut Hosp. Ass'n*, 891 F. Supp. at 690.

### ii. Time billed for filing Mr. Ward's *pro hac vice* motion

"It is within the [c]ourt's discretion whether to award attorney's fees for a pro hac vice motion." *135 W. Sunrise Realty Corp.*, 2008 WL 4453221 at *11.  As a corollary to the presumption that a reasonable, paying client would in most cases hire counsel from within his district, courts typically reduce or eliminate time billed for *pro hac vice* motions when Plaintiff has not persuasively demonstrated that his retention of out-of-district counsel was necessary.  *See, e.g.*, *Imbeault v. Rick's Cabaret Intern. Inc.,* 08 CIV. 5458(GEL), 2009 WL 2482134, at *8 (S.D.N.Y. Aug. 13, 2009); *135 W. Sunrise Realty Corp.*, 2008 WL 4453221 at *11.  As noted above, the Court is not convinced that Plaintiff's decision to ultimately retain Mr. Ward was based on the fact that no qualified counsel in the District was available or that out-of-state counsel would "likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 175.  Furthermore, 1.5 hours is an excessive amount of time to spend on such a boilerplate motion.  Accordingly, the Court declines to award Plaintiff attorney's fees for this time.

### iii. Time billed for drafting amended memorandum in opposition to first motion to dismiss the complaint

Defendants also maintain their objection to the amount of time billed for drafting Plaintiff's revised opposition to Defendants' first motion to dismiss [Dkt. 20], arguing that even Plaintiff's reduced calculation of 24.7 hours is unreasonable in light of "virtually identical briefs" submitted by Plaintiff in other cases.  [Dkt. 64 at 13; Ex. I.]  Plaintiff responds that he has already addressed Defendants' objections by reducing the amount of time billed for work on certain pages of the brief.  [Dkt. 65 at 19.]  As discussed *supra*, the Court agrees with

Defendants that virtually the entire brief in question was appropriated from Plaintiffs' previous briefs, and that furthermore it is merely a pared-down version of the brief originally submitted in this case.  For the reasons stated above, the amount of time billed for this brief will be limited to 5 hours.

      iv.  Time billed for drafting Mr. Harty's affidavit

      Defendants contend that the 1.5 hours billed on 11/30/12 for drafting Mr. Harty's affidavit is also excessive and should be reduced in light of the substantially similar affidavits filed by Mr. Harty in other Connecticut cases.  [Dkt. 64 at 13.]  In support of this position, Defendants submitted Exhibit J, which consists of the affidavit submitted by Mr. Harty in this case and three additional affidavits (the fourth appears to be a duplicate) submitted by Mr. Harty in other cases filed in this District.  [*Id.,* Ex. J.]  Each of these affidavits is approximately 2 pages long, and contains substantially similar allegations with regards to 1) Mr. Harty's disability, 2) his occupation, 3) his ties to the area, and 4) the general effects of the defendant's discrimination on him.  [Dkt. 64, Ex. J.]  Each affidavit then contains a different paragraph or two alleging the specific barriers and violations at that particular defendant's property.  [*Id.,* cf. 1–2 at ¶ 4 with 8 at ¶¶5–6; 2 at ¶ 5.]  Plaintiff maintains that the 1.5 hours billed to draft Mr. Harty's *Bull's Head Realty* affidavit is compensable because the factual circumstances of this case differ from those in other cases.  [Dkt. 65 at 19.]

      The affidavit in question contains one substantially original paragraph consisting of 12 lines of text detailing the barriers and violations specific to Defendants' Center.  However, this affidavit was originally submitted as an exhibit

to Plaintiff's *first* memorandum in opposition to defendants' motion to dismiss, which was filed on 8/29/12.  [Dkt. 17.]   The Final Invoice suggests that on 11/30/12, Plaintiff's Counsel subsequently billed the 1.5 hours in question for work on this affidavit before resubmitting it as an exhibit to the *revised* opposition brief [Dkt. 20].  [Dkt. 64, Ex. F at 2.]   However, a comparison of the 8/29/12 submission and the 11/30/12 submission reveals only a slight modification to paragraph 5, the date, and the font.  [*Cf.* Dkt. 17-1 with Dkt. 20-1.] Accordingly, the time billed for this affidavit will be reduced to 0.5 hours, which reflects time reasonably expended to confer with Mr. Harty, update the affidavit, and prepare it for resubmission.

### v.   Time billed for drafting the summary judgment motion, reviewing Defendants' objection, and drafting a reply

Defendants object to the amount of time Plaintiff billed for drafting his motion for summary judgment, reviewing Defendants' objection, and preparing a reply on the same basis as they object to the amended opposition brief and the client affidavit.  [Dkt. 64 at 13.]  Plaintiff denies this and represents that the amount of time billed is "entirely reasonable and not subject to reduction."  [Dkt. 65 at 19.] Defendants have failed to support their objection to the summary judgment briefing with any evidence—like that submitted in support of a fee reduction for the other two pieces of work product in dispute—that suggests the time Plaintiff spent was excessive or unnecessary.  As a result, the Court lacks any basis for determining that 38.9 hours, an otherwise customary amount of time to expend litigating a summary judgment motion, is unreasonable, and declines to reduce the hours billed.

**vi. Time billed for correspondence with Barbara Grady**

**Defendants contend that the entries for emails with Barbara Grady on 2/18/14 and 2/26/14 do not appear to relate to the case before the Court and should be removed. [Dkt. 64 at 13.] Plaintiff correctly asserts that Barbara Grady is Judge Bryant's Deputy Clerk, and that the time entries relate to the filing of Plaintiff's motion for summary judgment. [Dkt. 65 at 20.] However, upon review of the Final Invoice and docket, it is clear that these exchanges were initiated by Ms. Grady as a result of Plaintiff's failure to comply with the Court's Chambers Practices' requirement that documents filed electronically be filed in OCR text-searchable PDF format. [Dkt. 65, Ex. F at 4; *see* Dkt. 50-12, replacement PDF for Exhibit D.] Plaintiff's counsel will not be compensated for time spent correcting preventable errors. Furthermore, compliance with this Chambers' Practice was purely administrative and did not require any legal work. The Court will deduct the entries Plaintiff billed on 2/18/14 for time spent emailing with Ms. Grady (0.1 hour), and the time Plaintiff billed on 2/26/14 for time spent exchanging emails with Ms. Grady and preparing the correctly formatted exhibit (0.3 and 0.2 hours, respectively) for a total reduction of 0.6 hours.**

**vii. Time billed for Plaintiff's counsel's travel**

**Defendants contend that the travel fees Plaintiff's counsel incurred to attend the 8/5/14 settlement conference in Hartford, Connecticut should be reduced by fifty percent. [Dkt. 64 at 13.] Plaintiff responds that he is not claiming "travel fees" but rather billing for the time he spent in transit to and from the conference. [Dkt. 65 at 20.] Upon review of the Final Invoice, this appears to**

amount to 9.4 hours of travel between Pennsylvania and Connecticut, and another 0.8 hours traveling from the hotel to the courthouse.  [Dkt. 64, Ex. F at 5.]

As yet another corollary to the "forum rule," "expenses and fees related to travel must be excluded from an award of attorney's fees if 'the hypothetical reasonable client who wishes to spend the least amount necessary to litigate the matter . . . would have retained local counsel.'"  *U.S. ex. rel Feldman v. Van Gorp*, 03 Civ. 8135 (WHP), 2011 WL 651829, at *3 (S.D.N.Y. Feb. 9, 2011) (quoting *Imbeault*, 2009 WL 2482134 at *8).  Courts have typically found that a "reasonable, paying client would presumptively hire a firm located near the courthouse in which the litigation is to take place" because doing so "minimizes expenses incurred as a result of an attorney's travel time."  *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 266 (E.D.N.Y. 2008)  Thus, hours spent traveling by out-of-district attorneys into the district are not hours "reasonably expended" where competent counsel is available within the district.  *U.S. ex. rel Feldman*, 2011 WL 651829 at *3 n. 2.  This includes time spent traveling into and out of the district for a settlement conference.  *See, e.g.*, *Concrete Flotation Sys., Inc. v. Tadco Const. Corp.*, 07-CV-319 (ARR)(VVP), 2010 WL 2539771, at *7 (E.D.N.Y. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL 2539661 (E.D.N.Y. June 17, 2010).  Thus, this Court will not award attorney's fees for Plaintiff's counsel's time spent traveling to attend the settlement conference.  Furthermore, for the same reasons that the Plaintiff's attorney is not entitled to fees for travel time, he is not entitled to recover his $555.01 in costs related to travel between Royersford and Hartford. "Because

competent counsel was available within the district, these travel costs were not reasonably incurred." *U.S. ex. rel Feldman*, 2011 WL 651829 at *5.

viii. Time spent preparing fee application

In general, when a plaintiff is awarded reasonable attorney's fees, the plaintiff is also entitled to an award of reasonable attorney's fees in connection with the time spent to prepare the fee application. *See, e.g., Weyant v. Okst,* 198 F.3d 311, 316 (2d Cir. 1999); *Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.,* 71 F.3d 1053, 1059 (2d Cir. 1995).  Plaintiff's counsel represents that he spent ten hours drafting and filing the memorandum and exhibits in support of his motion for fees.  [Dkt. 65 at 20.]  Defendants have not objected.  The Court finds that this is a reasonable amount of time to expend on the motion and will include it in the final calculation of compensable hours.

ix. Excessive use of the minimum billing unit

In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case, and excessive, redundant or otherwise unnecessary hours should be excluded from the attorney's fee calculation.  *Mary Jo C. v. Dinapoli*, 09-CV-5635 (SJF)(ARL), 2014 WL 7334863, at *9 (E.D.N.Y. Dec. 18, 2014) (citing *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir.1997)). Upon review of the Final Invoice, it is apparent that Plaintiff's attorney has impermissibly billed a minimum of six minutes for every task performed regardless of the time he could have reasonably spent on the matter.  By way of example, the Court notes that on 4/11/13, Plaintiff's counsel billed twelve minutes

to review two seven-line consensual motions to extend time, one to extend time to respond to interrogatories and one to extend time to respond to a request to produce.  [Dkt. 64, Ex. F at 2.]  On the same date, counsel billed another six minutes to review a two-page motion objecting to a Rule 34 Motion for Inspection on the basis of irrelevance because the motion sought to inspect interior portions of the Defendant's property while the Complaint only identified exterior portions of the property as being noncompliant with the ADA.  [*Id.*]  On 4/12/13, counsel billed twelve minutes to read two docket entries: one which stated "ORDER: the parties are ordered to meet and confer and file, pursuant to Rule 26(f), a Report of Rule 26(f) Planning Meeting by Friday, 4/19/13," and the other which read simply "Docket Entry Correction: Document [25] Response Entered in Error. Per the local rules, discovery is not to be filed."  [*Id.*]  In other places, Plaintiff's counsel also appears to have inflated the time billed to complete routine tasks.  For example, on 9/11/12, counsel billed thirty minutes to obtain and file a certificate of good standing.  [*Id.*]  Plaintiff's counsel also billed a total of thirty-six minutes to review a handful of exceedingly simple, one- and two-line docket entries on 4/26/13—one of which was a calendar entry and two of which merely granted extensions of time.  [*Id.*]  Each of these entries, as well as multiple others that the Court will not address individually, call into question whether the number of hours included in Plaintiff's Invoice reflect time usefully and reasonably expended.  Accordingly, the Court will deduct the entries noted above from Plaintiff's fee request as excessively billed hours.

### 3.  Calculation of the presumptively reasonable fee and final fee award

In summation, based upon the Court's adjusted hourly rate, adjusted number of hours, and reduction of travel costs, Plaintiff is awarded $45,412.50 in attorney's fees and $2,142.50 in costs, calculated as follows:

| **Attorney's Fees** | |
|---|---|
| *Hours:* | |
| Requested | 155.7 hours |
| Reductions | – 1.5 hours (pro hac vice motion) |
| | – 19.7 hours (amended opposition to first motion to dismiss) |
| | – 1.0 hour (Mr. Harty's affidavit) |
| | – 0.6 hour (correspondence with Ms. Grady to correct error) |
| | – 10.2 hours (travel time) |
| | – 1.6 hours (excessive use of minimum billing unit) |
| Awarded | 121.1 hours |
| | |
| *Hourly Rate:* | |
| Requested | $425/hour |
| Awarded | $375/hour |
| | |
| *Total Attorney's Fees:* | |
| Requested | $66,172.50 |
| **Awarded** | **$45,412.50** |
| **Attorney Travel Costs** | |
| Requested | $555.01 |
| **Awarded** | **$0.00** |
| **Expert Fees & Costs** (including reinspection fee) | |
| Requested | $2,142.50 |
| **Awarded** | **$2,142.50** |
| **Total Fees and Costs** | |
| Requested | $68,870.01 |
| **Awarded** | **$47,555.00** |

**III. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Attorney's Fees is

GRANTED in part and DENIED in part.  The Clerk is directed to close this file.

IT IS SO ORDERED.

        _____/s/_____
        Hon. Vanessa L. Bryant
        United States District Judge

Dated at Hartford, Connecticut: March 11, 2015